UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANIBAL ORTIZ,

                    Petitioner,

     -against-


PEOPLE OF THE STATE OF NEW YORK,
et al.,
                    Respondents.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

12 CV 1116 **(**RJD**)**

DEARIE, Judge.

       On June 17, 2004, following a trial at which he testified, petitioner Anibal Ortiz was

convicted of sodomy in the second degree, sodomy in the third degree,[1] sexual abuse in the

second degree, and endangering the welfare of a child.  As summarized by the Appellate

Division, the evidence established that "[t]he complainant, then 13 years old, was staying with

her sister and her sister's fiancé, the [petitioner], on the morning of January 20, 2002.  While

[petitioner] was alone in the apartment with the complainant, he started showing a pornographic

movie, removed the complainant's clothing, licked her vagina, kissed her breasts, and stuck his

tongue in her mouth."  People v. Ortiz, 80 A.D.3d 628, 629 (2d Dep't 2011), lv. app. denied, 16

N.Y.3d 862 (Apr. 1, 2011).

       Petitioner was sentenced to an indeterminate term of two to six years on the second-

degree sodomy count and lesser, concurrent terms on the other counts.  He served the full six-

---

[1] A 2003 amendment to the applicable statutes replaced the word "sodomy" with "criminal
sexual act."  See 2003 Sess. L. of N.Y., ch. 264, §18 (substituting "criminal sexual act" for
"sodomy" in N.Y. Penal Law §§ 130.40[third degree]) and §19 (same substitution in N.Y. Penal
Law § 130.45 [second degree]).

year term, was released on July 24, 2010, and now petitions for a writ of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]

For the reasons that follow, the application is denied and the petition is dismissed.

## DISCUSSION

The Court assumes the parties' familiarity with the trial record and elaborates upon certain factual particulars in the context of the habeas claim to which they pertain. But because evidentiary, state-law questions that have already been rejected by the state courts—many on grounds that preclude federal habeas review—predominate in this petition, a comparable assumption cannot be made with respect to the fundamentals of habeas jurisprudence, which warrant restatement.

## I.    CONTROLLING HABEAS STANDARDS

To begin, federal habeas relief is available to a defendant convicted in a state court only when that conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has made clear that "it is *not* the province of a federal habeas court to reexamine *state-court* determinations on *state-law* questions" and that "*state-law* violations provide no basis for federal habeas relief." Estelle v.

---

[2] Under Supreme Court authority, petitioner's release from custody does not render the petition moot. See generally Spencer v. Kemna, 523 U.S. 1, 7-8 (1998). As the Court explained, it has long "been willing to presume that a wrongful criminal conviction has continuing collateral consequences," and a convict's interest in challenging that conviction therefore satisfies Article 3's case or controversy requirement. Id. at 8. Additionally, petitioner is currently serving a twenty-year term of special parole under the Sex Offender Registration Act, N.Y. Correction Law (Chapter 43, Article 6-C of the New York Corrections Law).

The petition is also timely. As the Court's docket reflects, petitioner first sought federal habeas relief while his state appeal was pending. The Court dismissed that petition without prejudice by order dated August 4, 2010. The Appellate Division decided petitioner's appeal in January 2011, the New York Court of Appeals denied leave to appeal by order dated April 1, 2011, and petitioner's conviction became final ninety days later, on or about July 1, 2011, when the time for petitioning the Supreme Court of the United States for certiorari expired. The current petition was filed in March 2012, well within the statutory one-year limitations period.

McGuire, 502 U.S. 62, 67–68, 68 n. 2 (1991) (emphases added).  Rather, "[i]n conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States." Id. at 68.  See also Lewis v. Jeffers, 497 U.S. 764, 780

(1990) ("federal habeas corpus relief does not lie for errors of state law"); Downs v. Lape, 657

F.3d 97, 101 (2d Cir. 2011) ("Our function on habeas review of a state court proceeding is not to

reenact the proceeding or peer over the shoulder of the state court judge ruling on questions of

state law. . . Instead, federal court review of a state's application of its own rules is deferential.

We recently reaffirmed that we are to determine only whether the state ruling falls within the

state's usual practice and is justified by legitimate state interests, not whether the state court

ruling was correct") (internal citations omitted), cert. denied, __ U.S.__, 132 S. Ct. 2439 (2012).

Evidentiary claims such as petitioner's that sweepingly invoking the concepts of "due

process" and "trial fairness" therefore require careful scrutiny.

Next, even when one or more of an applicant's claims is a bona fide federal or

constitutional claim cognizable on habeas, a petitioner must also demonstrate that he first

litigated each such claim in state court.  See generally  28 U.S.C. § 2254(b)(1); O'Sullivan v.

Boerckel, 526 U.S. 838, 843 (1999) ("the state prisoner must give the state courts an opportunity

to act on his claims before he presents those claims to a federal court in a habeas petition").  See

also Daye v. Attorney Gen. of New York, 696 F.2d 186, 194 (2d Cir.1982) (en banc) (outlining

the ways in which a claim's federal or constitutional nature may be "fairly presented" in state

court in order to satisfy the exhaustion requirement).

If a claim is unexhausted and petitioner has no available vehicle for returning to state

court (usually because the claim is one that could have been but was not raised on direct appeal),

the claim is "deemed exhausted" but also "procedurally barred" from federal habeas review.  See

generally <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989); <u>DiGuglielmo v. Smith</u>, 366 F.3d 130, 135 (2d Cir. 2004) ("Because DiGuglielmo can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted," citing <u>Harris</u>).   Such a claim can be entertained on habeas only where a petitioner can show either "cause" for the default and resulting "prejudice," or that the habeas court's failure to consider the claim would result in a "fundamental miscarriage of justice."  <u>Harris</u>, 489 U.S. at 262; <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>DiGuglielmo</u>, 266 F.3d at 135 ("because of the procedural default, DiGuglielmo is not entitled to have the claims entertained in a federal habeas proceeding unless he can show 'cause' for the default and actual 'prejudice' resulting therefrom. . . . or show that he is 'actually innocent'") (internal citations omitted).  The latter showing, of course, is rarely made; the former is often accomplished by showing that counsel was ineffective, <u>Murray</u>, 477 U.S. at 488–89, but *that* claim of ineffectiveness, too, must be litigated in state court before it can excuse a procedural default.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451–52 (2000).

Merely raising a federal claim in state court, however, is often not enough to earn federal review of the claim; the state court may (as it did with respect to some of petitioner's claims here) reject a claim on the ground that the petitioner failed to comply with the state's own procedural requirements for preserving and advancing the claim.  Such rulings bar federal habeas review.  <u>See</u> <u>generally</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 374 (2002) ("This Court will not take up a question of federal law presented in a case 'if the decision of [the state] court rests on a state  law ground is *independent* of the federal question and *adequate* to support the judgment" (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991) (emphases added by <u>Lee</u> Court)).[3]

---

[3] A claim disposed of in this manner is also considered "procedurally barred" or "procedurally defaulted" and therefore eligible for the cause-and-prejudice or miscarriage-of-justice safety

While "adequacy" remains a *federal* question, the federal courts "have held repeatedly" that failure to comply with New York's contemporaneous objection rule, N.Y.Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground barring federal review. Downs, 657 F.3d at 104. The requirement of federal restraint is not undermined by the fact that the state court, after declaring a federal claim to be unpreserved or otherwise procedurally defaulted, might proceed nevertheless to address the claim's merits. As the Supreme Court made clear:

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

Harris, 489 U.S. at 264 n. 10 (emphasis in original).

Respect for the state courts' adjudicatory choices in these situations continues to be the practice in the Second Circuit and this Court. See, e.g., Downs, 657 F.3d at 103 ("The Appellate Division's finding that Downs failed to preserve his Sixth Amendment claim for appellate review constitutes a state ground that is indisputably independent of the public trial right itself. We therefore consider only whether that finding is an adequate ground for decision. If the state ground for decision is adequate, a federal habeas court will not review a claim rejected by the state court") (alterations and quotations omitted) (citing Walker v. Martin, __U.S. __, 131 S. Ct. 1120, 1127 (2011) and Beard v. Kindler, 558 U.S. 53 (2009)); Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); Archer v. Smith, 12 CV 6182 (BMC), 2013 WL

---

valves and their requirements, as discussed above. See Harris, 489 U.S. at 262; Murray, 477 U.S. at 488-89; Edwards, 529 U.S. at 451-52.

1122705, *1 (E.D.N.Y. Mar. 16, 2013) ("If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative").

Assuming a petition presents claims that survive the foregoing requirements, the applicant then confronts the heart of the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"), which contains "arguably the narrowest standard of judicial review in the law." Archer, 2013 WL 1122705 at *3. To obtain relief, a petitioner must show that the state court's adjudication of his constitutional claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Supreme Court has taken great pains to explain to lower federal courts, compressed within this phrase is a formidable, rarely surmounted, *two-pronged* hurdle.

First, "clearly established federal law, as determined by the Supreme Court of the United States," unquestionably means *only Supreme Court holdings*, Thaler v. Haynes, __ U.S. __, 130 S. Ct. 1171, 1173 (2010), "as opposed to the dicta" of the Court's decisions, Williams v. Taylor, 529 U.S. 362, 412 (2000), or the holdings of federal appellate courts, Carey v. Musladin, 549 U.S. 70, 74 (2006), which apparently have no role whatsoever in the analysis. Although "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from th[e] Court's cases can supply such law," Marshall v. Rodgers, __ S. Ct.__, 2013 WL 1285304, *2 (Apr. 1, 2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)), Circuit Courts of Appeal do not have license to import their own decisions into habeas jurisprudence. The Supreme Court re-emphasized its uncompromising position last year, in Parker v. Matthews, __ U.S.__, 132 S. Ct. 2148 (2012). In Parker, in the context of a state prisoner's due process claim, the Court held that

"the Sixth Circuit . . . erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision," 132 S. Ct. at 2155, and further stated:

> As we explained in correcting an identical error by the Sixth Circuit two Terms ago . . . circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1).  It therefore cannot form the basis for habeas relief under AEDPA.  *Nor can the Sixth Circuit's reliance on its own precedents be defended in this case on the ground that they merely reflect* what has been "clearly established" by our cases.  The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in [Darden v. Wainright, 477 U.S. 168 (1986)] bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here. . . . It was plain and repetitive error for the Sixth Circuit to rely on its own precedents in granting Matthews habeas relief.

Id. at 2155-56 (emphasis added).

Second, Supreme Court constructions of the "contrary to or unreasonable application" test emphasize that habeas is "not a substitute for ordinary error correction through appeal" and that relief exists only for "*extreme malfunctions* in the state criminal justice systems."  Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786 (2011) (internal quotation and citation omitted) (emphasis added).  In practice, this means that

> an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than de novo review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (all internal quotations and citations omitted).  See also Bobby v. Dixon, 565 U.S. __, __, 132 S. Ct. 26, 27 (2011) (per curiam) ("a state prisoner seeking a writ of habeas corpus from a federal court must show that the state

court's ruling on the claim being presented in federal court was *so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*") (emphasis added) (internal quotation and citation omitted).

Indeed, this Court shares the recent observations of Judge Cogan, who notes that the Supreme Court's most recent pronouncements "may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000), that while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Archer, 2013 WL 1122705 at *3 n. 2. As Judge Cogan observes, the high Court's 2011 decisions quoted here prompted the Second Circuit to reverse its own earlier grant of habeas relief, on the issue of evidentiary sufficiency, in Rivera v. Cuomo, 664 F.3d 20, 21–22 (2d Cir. 2011)("revisit[ing] [its] original decision to ensure that [it] had afforded the state courts and the jury the full extent of the deference they are owed under [ ] AEDPA," and "revers[ing] course").

Alternatively, of course, a petitioner may also seek relief on the basis that a state court adjudication of his constitutional claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). But even when petitioners do not expressly seek relief on this theory, they must overcome the statutory presumption of correctness that attaches to the factual findings that form the bases for the state court decisions they challenge. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be

correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").[4]

## II. ANALYSIS OF PETITIONER'S CLAIMS

The foregoing framework would appear, whether paradoxically or perhaps by the high Court's design, to reduce even the most unwieldy of petitions to an almost mechanical, checklist-driven adjudication (based on whether a controlling Supreme Court holding has been identified) or even to summary dispositions declaring simply whether "extreme malfunction" or "error well understood . . . beyond any possibility for fairminded disagreement" has occurred, which they almost never will. At the same time, summary dispositions are not what, in this Court's experience, the Circuit expects from its district courts. Of course, having reviewed the petition and the record, the Court can readily conclude that habeas relief is not warranted in this case. Petitioner, the victim, and another family member all testified and both sides argued to the jury that the case came down to credibility. In addition, DNA consistent with petitioner's was found on the victim's underpants; the inherent limits of such evidence and the risks of contamination under the circumstances were matters fully explored on cross-examination and in closing arguments. The jury, in rendering its verdict of guilt, resolved these factual issues. Both the Appellate Division and the trial court passed upon the principal legal and factual challenges petitioner launched against his conviction. There is nothing to indicate that, at

---

[4] Neither the Supreme Court nor the Second Circuit has resolved whether the "un-reasonableness" test of 2254(d)(2) and the "clear and convincing evidence" requirement of 2254(e)(1) embody materially different considerations. See Jones v. Murphy, 694 F.3d 225, 238 n. 4 (2d Cir. 2012) (citing Wood v. Allen, 558 U.S. 290, 130 S. Ct. 841, 848–49, 175 L.Ed.2d 738 (2010) (declining to reach question)), cert. denied, __ U.S. __, __ S. Ct.__, 2013 WL 598 598 (U.S. Feb. 19, 2013). As the discussion above reflects, the Court need not make that determination in order to adjudicate this petition.

any point, petitioner was the victim of an "extreme malfunction[] in the state criminal justice system." Harrington, 131 S. Ct. at 786.

Assuming without deciding, however, that that cannot be all that the Supreme Court and the Second Circuit expect the district court to say on the matter, the Court proceeds to its customary, substantive claim-by-claim adjudication.

Petitioner broadly asserts that his "rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution were violated when the People knowingly con[c]ealed, withheld and submitted misleading evidence and arguments, and withheld *Rosario* and *Brady* material."  Unraveled and analyzed separately, the petition's claims assert the following:

**A.     The Claims Other than Ineffective Assistance of Counsel**

1.  Petitioner claims that his right to a fair trial was violated by the admission into evidence of the underpants that the complainant wore at the time of the incident on the theory that the state allegedly failed to establish a proper chain of custody.   Chain of custody concerns, however, are matters of state law and not a basis for federal habeas relief.

To the extent further discussion is required, the record shows that petitioner raised this claim both in his post-conviction motion to vacate pursuant to CPL § 440.10 in the trial court and in his later-filed direct appeal to the Appellate Division.  Both courts rejected the claim in plenary discussions.

The 440 court first rejected the claim on the grounds that it had already rejected the same claim in petitioner's motion to set aside the verdict pursuant to CPL § 330.30, and then proceeded to discuss the merits.  People v. Ortiz, 2008 N.Y. Misc. LEXIS

93138, *13-15, 2008 N.Y. Slip. Op. 32414(U) (Sup. Ct. Kings Co. June 20, 2008).

Relying solely on New York state authorities delineating the state rule for laying "the evidentiary foundation for real evidence alleged to be the actual object associated with a crime," the 440 court found that "the testimony at trial that the underwear contained in the evidence bag was the same as the panties the complainant wore on the date of the incident and appeared to be in essentially the same condition as when turned over to the police satisfied the People's burden that the evidence was identical to that involved in the crime and had not been tampered with." Id. at *13-*14. The court further found that "[t]he issue of possible contamination of the evidence by commingling with other dirty clothes prior to its retrieval by the police was fully explored upon the cross-examination of the People's expert witness" and, therefore, that "the evidence provided sufficient proof of authenticity to warrant admission of the panties." Id. at *14. Finally, the court held, "any gap in the chain of custody affected the weight to be accorded the item, not its admissibility." Id.[5]

The Appellate Division, however, found the petitioner had failed to preserve his chain of custody claim for appellate review, People v. Ortiz, 80 A.D.3d at 629, and then proceeded to discuss the merits of the claim in detail. The factual foundation of the claim, according to the Appellate Division, is as follows:

> The complainant returned home to her parents on January 21, 2002 [the day after the alleged abuse]. She threw the underpants she had been wearing into a laundry basket, which also contained various articles of dirty clothing that had been worn by her mother and father. The defendant was arrested on February 14, 2002.

_____

[5] The 440 Court proceeded to reject petitioner's specific claim that the underpants in question might have belonged to "the complainant's older sister and [his] then girlfriend" as "unsupported by the trial record, or by any affidavits from potential witnesses that would have supported the claim." Id.

On February 9, 2002, the police called the complainant's family to tell them to place the underpants the complainant had worn on the day of the incident in a brown paper bag. The complainant's mother told her to retrieve the underpants from the laundry basket. She retrieved it and placed it in a plastic bag. Her mother gave the underwear to her father in a brown paper bag, and the father brought the bag to an assistant district attorney. A detective collected the bag from the assistant district attorney and verified that it contained a pair of blue women's underpants. He brought it to the Office of the Chief Medical Examiner of the City of New York on February 28, 2002. Testing revealed that the defendant's DNA matched DNA found on the underpants. Testing also revealed the presence of a second male's DNA on the underpants, which could have come from the father's dirty clothing which was in the laundry basket with the underpants.

Id.

The Appellate Division, in a discussion materially similar to that of the 440 Court, then outlined the state law requirements for the admissibility of real evidence and concluded that testimony at trial satisfied those requirements:

In any event, "[t]o be admissible, any piece of real evidence must be shown to accurately portray a relevant and material element of the case. When real evidence is purported to be the actual object associated with a crime, the proof of accuracy has two elements. The offering party must establish, first, that the evidence is identical to that involved in the crime; and, second, that it has not been tampered with" . . . Proof of a complete chain of custody is one way of demonstrating the authenticity of an item of real evidence . . . "A proper chain of custody is developed when there are reasonable assurances in the record that the evidence sought to be admitted is the same item as was used in the crime and that it is unchanged. As long as these assurances have been established, any deficiencies in the chain of custody go only to the weight to be given to the evidence"… The testimony at trial gave reasonable assurances that the underpants admitted into evidence were the same underpants the complainant had worn at the time of the incident and were substantially unchanged. . .

Id. at 629-630.

Assuming without deciding that petitioner's evidentiary claim somehow implicates his constitutional right to a fair trial, it cannot form a basis for habeas relief because the Appellate Division rejected the claim on an adequate and independent state law claim, precluding federal review.

Even if the claim were reviewable, it would not form a basis for federal habeas relief because petitioner has not pointed to any Supreme Court holding, nor is this Court aware of one, arguably implicated by the Appellate Division's chain-of-custody rulings. Wright v. Van Patten, 552 U.S. 120, 126 (2008) (when "[Supreme Court] cases give no clear answer to the question presented, let alone one in [a habeas petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law") (internal quotations, citations, and alterations omitted); Lolisco v. Goord, 263 F.3d 178, 191 (2d Cir. 2001) ("Petitioner fails to show that [the state's] adjudication of his claims was contrary to or involved an unreasonable application of Supreme Court precedent because he fails to identify a clearly established Supreme Court precedent that bears on his claim").

Further still, petitioner has not shown that the essentially fact-based state court decisions that he challenges are "unreasonable . . . in light of the evidence presented" within the meaning of 2254(d)(2), nor has he offered the clear and convincing evidence required by section 2254(e)(1) to rebut the presumption of correctness that attaches to the factual findings that form the bases of the state court rejection of his chain of custody claim.

2.      Relatedly, petitioner claims that the state's DNA expert, Marie Samples, should not have been permitted to give an opinion based on test results from the underpants because, he again claims, the state allegedly failed to establish a proper chain of custody. This is not a federal or constitutional claim and so cannot be the basis for habeas relief.

In any event, as the Appellate Division found, "once the People properly authenticated the underpants, any evidence that the DNA on the underpants could have been contaminated goes to the weight of the evidence, not to the admissibility of the evidence." Resting on the same premise as the previous claim, this claim fails for all the additional reasons just discussed.

3.      Petitioner claims that his convictions of sodomy (now criminal sexual act) in the third degree (N.Y. Penal Law § 130.40) and sexual abuse in the second degree (N.Y. Penal Law § 130.60) violate the constitutional guarantee against double jeopardy because they are both concurrent inclusory offenses of sodomy (now criminal sexual act) in the second degree (N.Y. Penal Law § 130.45).

This claim, which on its face invokes a constitutional issue, was raised on petitioner's direct appeal; the Appellate Division held, however, that owing to petitioner's failure to comply with New York's contemporaneous objection rule (CPL §470.05(2)), the claim was unpreserved for appellate review.  Ortiz, 80 A.D. 3d at 629.   Because petitioner's failure to comply with section CPL 470.05(2) is an independent and adequate state law ground, Downs, 657 F.3d at 104, and because he has not shown or advanced claims of cause and prejudice or a possible miscarriage of justice sufficient to overcome the procedural bar, federal review of this claim is not authorized.  Lee, 534 U.S. at 375, Harris, 489 U.S. at 262; Murray, 477 U.S. at 488-89.[6]

In an alternative holding, the Appellate Division concluded:  "[i]n any event, the contention is without merit, as sodomy in the third degree and sexual abuse in the second degree are not concurrent inclusory offenses of sodomy in the second degree."  Ortiz, 80 A.D.3d at 629. Under the authorities discussed above, this alternative holding does not render the claim reviewable on habeas.  See Harris, 489 U.S. at 264 n. 10; Archer, 2013 WL 1122705 at * 1. Further, although petitioner himself invokes the Double Jeopardy Clause of the Fifth Amendment, in substance his claim involves only the state court's interpretation of the elements of state-defined crimes, which does not implicate habeas-worthy federal law. Estelle, 502 U.S. at

---

[6] As noted near the end of this discussion, petitioner does allege that counsel was ineffective for failing to raise the double jeopardy issue with respect to these three counts; that ineffectiveness claim, however, is not eligible for cause-and-prejudice analysis because it, too, must be first be raised in the state court, Edwards, 529 U.S. at 451-52, but it was not.

67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on-state law questions").

Assuming arguendo that petitioner's "double jeopardy" allegations are not procedurally barred and that they do advance a bona fide constitutional claim, they would still not entitle him to habeas relief.   Petitioner's complaint is that he was convicted, for a single criminal act or episode, of three different crimes:  second-degree sodomy, third-degree sodomy and second-degree sexual abuse.  The Appellate Division's rejection of this claim was not an "unreasonable application" of the holding of Blockburger v. United States, 284 U.S. 299 (1932), which controls the double jeopardy question here.  Under Blockburger,

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.... "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

284 U.S. at 304 (internal citations omitted).

It would not have been "so lacking in justification" or reflective of "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Bobby, 132 S. Ct. at 27, for the Appellate Division to have concluded that the third-degree sodomy and second-degree sexual abuse statutes each "requires proof of an additional fact" that the second-degree sodomy statute does not.

Petitioner was convicted of violating subsection 1 of the second-degree sodomy statute, Penal Law section 130.45, which at the relevant time provided that, "A person is guilty of sodomy in the second degree when: 1. being eighteen years old or more , he or she engages in

deviate sexual intercourse with another person less than fifteen years old."[7]  He was also

convicted of subsection 2 of the third-degree sodomy statute, Penal Law section 130.40, which at

the relevant time provided that, "A person is guilty of sodomy in the third degree when: 2. Being

twenty-one years old or more, he or she engages in deviate sexual intercourse with a person less

than seventeen years old."   Finally, he was convicted of subsection 2 of the second-degree

sexual abuse statute, Penal Law section 130.60, which provides that "A person is guilty of sexual

abuse in the second degree when he or she subjects another person to sexual contact and when

such other person is: 2. Less than fourteen years old."  The ages of the complainant (13) and

petitioner (39) were not in dispute.

    Because the second-degree sodomy statute requires proof of a younger victim than third-

degree sodomy statute, it would not have been an objectively unreasonable application of

Blockburger for the Appellate Division to have concluded that the two statutes define different

crimes.  Likewise, because the second-degree sexual abuse statute requires, in turn, proof of a

younger victim than the second-degree sodomy statute, it would not have been an objectively

unreasonable application of Blockburger for the Appellate Division to have concluded that those

two statutes also define different crimes.

    For all these reasons, petitioner's double jeopardy allegations do not state a basis for

habeas relief.

    4.    Petitioner claims that the evidence was legally insufficient to convict him of

sodomy in the second degree.  Because petitioner failed to raise this claim on direct appeal or in

his motion to vacate, the claim is unexhausted, but because petitioner cannot raise this on-the-

_____

    [7] The phrase "deviate sexual intercourse" has been replaced by a "oral sexual conduct or anal sexual conduct."  At the time in question, however, "deviate sexual intercourse" was defined to include "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva."

record claim in a second 440 motion, the Court deems the claim exhausted but also procedurally barred.   Further, because petitioner has not shown or even advanced claims of cause and prejudice or of a possible miscarriage of justice, federal review of this claim is not authorized. See Harris, 489 U.S. at 262; Murray, 477 U.S. at 488-89; Edwards, 529 U.S. at 451-52.

Even if the claim were before this Court, it would be frivolous under controlling authorities.  As the Supreme Court recently re-emphasized:

> We have said that 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," Cavazos v. Smith, 565 U.S. __, __132 S. Ct. 2, 4 (2011) (per curiam).  The evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Parker, 132 S. Ct. at 2152 (emphasis in original)

Complainant's testimony that petitioner licked her vagina, which the jury was free to credit, satisfied the definition of "deviate sexual intercourse," which was defined at the relevant time to include "contact between . . . the mouth and the vulva."  Corroborating the victim's testimony was evidence that a DNA profile consistent with petitioner's was found on the complainant's underpants.  On the basis of this evidence, a rational jury could have found petitioner guilty of the sexual crimes with which he was charged.   Petitioner's sufficiency claim therefore does not present a basis for federal habeas relief.

5.      A brief summary of part of the trial testimony is necessary to place the next several claims in context.

The complainant's primary residence was with her parents in Dutchess County, New York; in the course of recounting how she came to be at the Brooklyn home of her sister and her sister's fiancé (petitioner) on the morning of the crime (January 20, 2002), the complainant

testified that on January 18, 2002, she was visiting her grandmother in New Jersey.  She stated that her plan had been to stay only for dinner and so she did not pack overnight clothes, although she did end up staying the night.  The following day, her sister and petitioner came to the grandmother's house for dinner and afterward took complainant back to Brooklyn with them to spend the long Martin Luther King weekend.  Before leaving New Jersey, the complainant further testified, she showered and put on freshly laundered underpants lent her by her grandmother.  Later, in Brooklyn, she borrowed a tank top and shorts from her sister, but wore her own brassiere and her grandmother's underpants.

After trial, petitioner submitted a statement from a defense investigator who interviewed the grandmother approximately five years after the crime; in that statement, the investigator asserted that the grandmother told him that she did not receive a visit from the complainant on January 18, 2002 but may have spent that weekend in the hospital, and that she did not lend the complainant underpants.

Petitioner's current claim is that the post-trial statements attributed to the grandmother by the defense investigator constitute exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), that the prosecution either suppressed or should have disclosed to the defense.  Petitioner also raised this claim in his post-trial motion to vacate pursuant to CPL §440, where it was rejected on procedural grounds and on the merits, in a comprehensive, detailed discussion.

The 440 court first found that "[t]he denial by the complainant's grandmother . . . to the defendant's investigator . . . that the complainant had visited her on January 18, 19 or 20 of 2002, and that the grandmother had lent the complainant a pair of underpants, are not supported by a sworn affidavit by the grandmother."  Ortiz, 2008 N.Y. Slip Op. 32414(U) at *4.  CPL section 440.30(4)(b) allows the 440 court to deny a motion based on the "existence or occurrence of

facts" if it is not accompanied by sworn allegations supporting those facts. The 440 court concluded that the investigator's report, and the transcript he prepared of his interview with the grandmother, were "hearsay allegations about what the grandmother said" but not the "sworn allegations from the grandmother herself" that CPL section 440.30(4)(b) requires. Id. at *4-5.

In any event, the 440 court further concluded, the "facts alleged" would not state a legal basis for relief because "the prosecution never gained this information, [ ] is not required to disclose evidence potentially favorable to the defense if it does not possess such evidence . . . [and is] not under a duty to obtain or create this evidence for defendant's benefit." Id. at *5. Further still, the 440 court, which had presided over petitioner's trial, also concluded that "the grandmother's statement in 2007 does not demonstrate that the complainant's testimony at trial lacked veracity" and that "the grandmother's claim that she may have spent the weekend of January 18, 2002 through January 20, 2002 in the hospital is contradicted by the record, where the complainant, the complainant's sister, *and [petitioner]* all testified that they had dinner with the grandmother in New Jersey on the night of January 19, 2002." Id. (emphasis added).

Assuming without deciding that petitioner's <u>Brady</u> claim is cognizable (and not barred by the independent and adequate state law doctrine by virtue of the procedural component of the 440 court's decision), it does not provide a basis for habeas relief. Petitioner has not offered this Court any basis for concluding that the 440 Court's adjudication of his Brady claim is objectively unreasonable as a factual matter or that it reflects an objectively unreasonable application of the holding in <u>Brady</u>, which requires the state to disclose exculpatory material information in its possession, but which imposes no duty to acquire and deliver evidence it does not have.

Petitioner's <u>Brady</u> claim therefore does not entitle him to federal habeas relief.

6.     Relatedly, petitioner claims that the grandmother's statements to the defense investigator constituted newly discovered evidence requiring that his case be re-opened. This claim does not implicate federal law and so cannot form a basis for habeas relief.

Assuming without deciding that the claim presents a cognizable federal issue, it is largely duplicative of the <u>Brady</u> claim, was rejected by the 440 court largely for the reasons set forth in its <u>Brady</u> analysis, and therefore fails as a habeas claim for the same reasons as the <u>Brady</u> claim. The 440 court further emphasized that under New York law, evidence qualifies as "newly discovered" only when, *inter alia,* it is evidence "that could not have been produced by the defendant at trial even with the exercise of due diligence." <u>Ortiz</u>, 2008 N.Y. Slip Op. 32414(U) at *7. Petitioner has not shown that the 440 court's application of the state law standards governing newly discovered evidence is unreasonable factually, or that it reflects an unreasonable application of any holding of the United States Supreme Court. The newly discovered evidence claim therefore does not entitle petitioner to habeas relief.

7.     Petitioner claims that the state's DNA expert Marie Samples should not have been allowed to testify about the Chief Medical Examiner's report because, according to petitioner, that document was erroneously admitted as a business record. Petitioner also claims that the state concealed the identity of the report's preparer, former CME Harpreet Singh (no longer employed at the medical examiner's office at the time of trial) and should have called him as a witness. These are quintessential state-law evidence questions that certainly have not been the subject of any Supreme Court holdings of which this Court is aware and they certainly cannot form the basis for federal habeas relief.

In any event, petitioner did not raise these claims in his direct appeal or in his 440 motion and has not made the showing required to excuse the procedural default. As discussed more

fully below, petitioner does assert that counsel was ineffective for failing to challenge the admission of the medical examiner's report as a business record, but to qualify for cause and prejudice analysis, that ineffectiveness claim itself must first be exhausted in state court, and it was not. Edwards, 529 U.S. at 451-52.



**B. The Ineffective Assistance of Counsel Claim**

Petitioner lists eleven alleged grounds of ineffectiveness by trial counsel.

**1. Governing Standards**

The standards governing ineffective assistance of counsel claims are well established. To show that the performance of counsel deprived him of his Sixth Amendment right, petitioner bears the considerable burden of demonstrating that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Supreme Court has advised:

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Id. at __.

In the habeas context, when the state court has already rejected the claim, an applicant seeking to establish the ineffective assistance of counsel bears an especially formidable burden.

In the words of the high Court: "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult [because] [t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 131 S. Ct. at 788 (internal quotations and citations omitted).

Petitioner's principal assertions of ineffectiveness were raised in his post-conviction motion to vacate and were rejected in a plenary discussion.

### 2.    Petitioner's DNA-Related Ineffectiveness Assertions

Petitioner claims that his trial counsel failed "to conduct any research relating to possible contamination of the complainant's underpants, … to call an expert to explain how the underpants may have been contaminated [or to] explain the effects [of] moisture resulting from the underpants remaining in a hamper for 37 days after the incident." <u>Ortiz</u>, 2008 N.Y. Slip Op 32414 (U) at *8-9.   As the 440 court noted, trial counsel did call a DNA expert, and *both* the state's and the defense experts "testified that DNA could have been transferred onto the underpants from other fabrics with which they came in contact." <u>Ortiz</u>, 2008 N.Y. Slip Op 32414 (U) at *9.  As the 440 court further found, however, "the allegations that the underpants were contaminated, or may have been exposed to moisture sufficient to affect the results of DNA testing[,] is not supported by evidence adduced at trial, or by Harpeet Singh [the Chief Medical Examiner]'s affidavit." <u>Id.</u>

In its review of the relevant evidence, the 440 court further explains:

> Moreover, Mr. Singh's affidavit says nothing about the effects of moisture, nor that he was prepared to testify that the effects of moisture would have yielded false results.  Additionally, testimony at trial by the People's expert, Marie Samples, assistant director at the Department of Forensic Biology, Office of the New York City Chief Medical Examiner, was to the effect that if the DNA on the underpants had been degraded, it would not have been possible to extract [petitioner's] DNA profile, nor the profile of anyone else.

<u>Id.</u>

Finally, the 440 court concluded that petitioner's claim "that defense counsel should have called a further expert is unsupported by the record evidence, or by any affidavits from potential witnesses that would have supported this claim." Id. at *9-10.

Particularly in light of the "doubly" deferential nature of habeas review of a state court's ineffectiveness holding, Harrington, 131 S. Ct. at 788, petitioner cannot show that the 440 court's rejection of this branch of his ineffectiveness claim reflects an unreasonable application of Strickland or an objectively unreasonable assessment of the facts before it.[8]

### 3. The Child Sex Abuse Syndrome Allegations

Petitioner claims that counsel was ineffective for failing to adequately prepare to cross-examine Dr. Lewittes, who testified for the state as an expert on child sex abuse syndrome. Here, as he did in his 440 motion to vacate, petitioner complained that counsel allegedly "failed to request copies of underlying studies relied on by Dr. Lewittes, and did not call a defense expert of his own to rebut the opinions and conclusions [Lewittes] asserted." Ortiz, 2008 N.Y. Slip Op 32414 at *10. The 440 court rejected the claim without a hearing because (i) petitioner's assertions were "not supported by sworn affidavits," (ii) "neither petitioner nor the record evidence shows any evidence that Dr. Lewittes relied upon any particular studies in rendering his opinion," and (iii) petitioner "offered no affidavits from any experts whom defense counsel should have called to rebut Dr. Lewittes's testimony, nor any evidence that there were studies that contradicted Dr. Lewittes's views." Id. at *10-11.

Again, particularly in light of the "doubly" deferential nature of habeas review of a state court's ineffectiveness holding, Harrington, 131 S. Ct. at 788, petitioner cannot show that the

---

[8] The Court observes that as part of this branch of the claim, the petition refers to the report by one Lawrence Kobilinsky, which was not submitted to the state court and is therefore not considered here.

440 court's rejection of this branch of his ineffectiveness claim reflects an unreasonable application of <u>Strickland</u> or an objectively unreasonable assessment of the facts before it.[9]

### 4.  Allegations Barred by the Independent and Adequate Law Doctrine

Petitioner claims that counsel was ineffective for failing to move to dismiss the several sodomy charges in light of the 2003 amendments to the applicable statutes.  As noted above, those amendments, which took effect after the commission of his criminal acts and his indictment but before his trial, replaced the word "sodomy" with "criminal sexual act" and the phrase "deviate sexual intercourse" with "oral sexual conduct or anal sexual conduct."

Petitioner raised this claim in his 440 motion to vacate, where it was rejected on procedural grounds.  <u>Ortiz</u>, 2008 N.Y. Slip Op  32414 at *12.  Relying on N.Y. C.P.L. §440.10(2)(b),which provides that a court "must" deny a motion to vacate when the judgment "is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review" of the claim on direct appeal, the 440 court concluded that "trial counsel's failure to dismiss the sodomy charges, or request curative instructions are set out in the record, and are, therefore, procedurally barred."  <u>Id.</u>  The court did not proceed to reach the merits in the alternative.

The denial of a claim under CPL § 440.10(2)(b) is deemed to rest upon an independent and adequate state ground and render the claim procedurally defaulted.  <u>Holland v. Irvin</u>, 45 F. App'x. 17, 20 (2d Cir. 2002).  Petitioner has not asserted that appellate counsel was ineffective for failing to allege that trial counsel was ineffective in this way or otherwise made the requisite showing of cause-and-prejudice or manifest injustice to excuse the default.

---

[9]  The Court observes that in support of this branch of his claim, petitioner has attached a copy of a paper by one Robert Summit which does not appear to have been submitted as an exhibit on the 440 motion.  Petitioner has not explained, however, how the Summit paper could have been used at trial to undermine the testimony of Dr. Lewittes.

### 5.    Allegations relating to the Complainant's Grandmother

Petitioner complains that trial counsel was ineffective for failing, before trial, to obtain from the grandmother a statement comparable to the one his investigator obtained five years later.   Although, as discussed, petitioner fully litigated other facets of the grandmother-statement claim in state court, he nowhere squarely presented it to the state court as a species of counsel's ineffectiveness, so this branch of the ineffectiveness claim is unexhausted.   Technically petitioner could present the claim in a second motion to vacate in state court, but it is likely that the state court would reject the claim on the ground that it could have been brought in the previous motion to vacate.   See N.Y. C.P.L. s 440.10(3)(c).   Regardless of whether the claim is procedurally barred or in some way cognizable, the Court would reject it as speculative. Additionally, based on the meritlessness of petitioner's Brady and new-evidence claims (discussed above), it is highly unlikely that petitioner could show that counsel's alleged failure to interview the grandmother prejudiced him within the meaning of Strickland.

### 6.    Other Never-Raised Allegations

Four additional branches of petitioner's ineffectiveness claim involve allegations of ineffectiveness that petitioner never presented to the state court but that the Court deems exhausted and procedurally barred (inasmuch as they are based on matters appearing in the record and so could not be raised in a subsequent motion under CPL 440).   None of these four, therefore, provides a basis for habeas relief.[10]

---

[10] The allegations in this category include petitioner's assertions that counsel was ineffective for (a) calling only petitioner as a witness after having mentioned in his opening statement that petitioner had no burden of proof, which according to petitioner "provid[ed] a presumption of guilt that prejudice[d] petitioner[]"; (b) failing to challenge the prosecution's motion under the Rape Shield Law; (c) failing to challenge the admission of the Chief Medical Examiner's Report on the ground that it was not a business record; (d) failing to move to dismiss the sodomy counts

## 7. Unexhausted and Technically Viable but Meritless Claims

Three additional branches of petitioner's ineffectiveness claim involve allegations that petitioner has not presented to the state court but technically still could (in a second motion to vacate, because they do not involve matters appearing on the record), but which, in this Court's view, could not be a basis for habeas relief. These branches baldly assert (i) that counsel failed to investigate and introduce evidence of the "extreme nature" of petitioner's relationship with the complainant and her family, (ii) that counsel failed to present witnesses whose testimony would have brought about a more favorable result, and (iii) that counsel fell asleep twice during trial.

Allegation (i) is vague and speculative. As to allegation (ii), to the extent petitioner intends it to embrace his claim that counsel failed to call a second DNA expert or a child sex abuse syndrome expert, it has already been addressed; to the extent it involves one Officer Feliciano, whom petitioner identifies as a friend who would have testified as a character witness, the claim remains vague, unsupported, and lacking in the required <u>Strickland</u> prejudice. Finally, with respect to allegation (iii), petitioner has offered no proof or particulars and so cannot establish that he was prejudiced.

## CONCLUSION

The application of petitioner Anibal Ortiz for a writ of habeas corpus under 28 U.S.C. §2254 is denied and the petition is dismissed. For the reasons discussed petitioner's motion for a hearing on his claims (ECF #12) and for leave to perform additional DNA testing (ECF #15) are denied. Petitioner's motion for leave to file an amended complaint (ECF # 18) is denied as moot.

---

on the ground that the phrase "deviate sexual intercourse" as used in the statute was prejudicial; and (d) failing to seek a double-jeopardy based dismissal of certain counts as duplicative or lesser included offenses of other counts.

Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
        March 31, 2013

                                    /s/ Judge Raymond J. Dearie
                                    _____
                                    RAYMOND J. DEARIE
                                    United States District Judge